# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HENNEPIN COUNTY,<br>300 South Sixth Street<br>Minneapolis, MN 55487,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES,<br>200 Independence Ave. SW<br>Washington, DC 20201,<br><br>and<br><br>ALEX AZAR, Secretary,<br>Department of Health and Human Services,<br>200 Independence Ave. SW<br>Washington, DC 20201,<br><br>Defendants. | Civil Action No. 18-CV-<br><br>**COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.     In 2015, Hennepin County received a five-year Teen Pregnancy Prevention Program ("TPPP") grant from the U.S. Department of Health and Human Services' ("HHS") Office of Adolescent Health ("OAH") to fund a project called It's OUR Future ("IOF").  The project is currently being implemented in five communities within the county that have disproportionately high rates of teen pregnancy and sexually transmitted infections:  Brooklyn Center, Robbinsdale, North Minneapolis, Central Minneapolis and Richfield.  It's OUR Future supports 30 community-based health educators that implement evidence-based sexual health curricula in schools and youth-friendly health clinics.  The project is part of the county's larger teen pregnancy prevention initiative called Better Together Hennepin: Healthy Communities—

1

Healthy Youth.

2.      Hennepin County's teen pregnancy prevention efforts are working.  Teen births fell 64% in Hennepin County between 2007 and 2016—a steeper decline than measured state-wide and nationally over that same period.  In its first three years, It's OUR Future reached an estimated 13,183 youth, and will reach an additional 11,000 to 12,000 youth in the next two years in these same communities.

3.      Within the five-year project period, grant recipients are awarded funds in one year budget periods, consistent with Congress' annual appropriation of funding.  In the notice of award for the July 1, 2017 – June 30, 2018 budget period, Hennepin County and the other TPPP grant recipients were informed—without explanation—that project periods would terminate two years early, on June 30, 2018.  Hennepin waited to see if Congress would nonetheless provide funding, which it did in full on March 23, 2018.  Despite this appropriation, HHS did not reconsider its termination decision.

4.      Several of the 81 TPPP grant recipients across the country have brought actions for injunctive and declaratory relief in recent weeks, and Hennepin County now joins them. HHS' premature termination of Hennepin County's grant means that thousands of youth in the county's communities with the highest teen birth rates and social and racial disparities will not receive evidence-based sexual health education, and that approximately $3 million in federal funds will not go to support community-based health educators over the next two years. Hennepin County estimates that approximately 20 of these health educators will face layoffs as a result of the early grant termination.

### JURISDICTION AND VENUE

5.      Venue is proper in this district because a substantial part of the acts or omissions giving rise to the claim occurred in this judicial district. 28 U.S.C. § 1391(e).

6.      This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1361, 28 U.S.C. § 2201, and 5 U.S.C. § 702.

## PARTIES

7.      Plaintiff Hennepin County is a municipality seated in Minneapolis, Minnesota. Hennepin County is by far Minnesota's most populous county, with an estimated 1.25 million residents living in its 45 cities.

8.      Defendant HHS is the agency of the federal government of the United States responsible for administering the TPPP. HHS is an agency within the meaning of the Administrative Procedure Act (APA).

9.      Defendant Alex Azar is the Secretary of HHS and the agency's highest-ranking official. Plaintiff sues Secretary Azar in his official capacity.

## BACKGROUND

### *The Federal Teen Pregnancy Prevention Program*

10.      The Teen Pregnancy Prevention Program is a congressionally mandated program that funds evidence-based programs to prevent teen pregnancy. The TPPP is administered within the HHS Office of the Assistant Secretary of Health by the Office of Adolescent Health.

11.      Congress first appropriated funds for the TPPP for FY 2010.  Congress has mandated the continuation of the TPPP and has appropriated funds to HHS to administer the program for each fiscal year using similar appropriations language.

12.      Starting in 2012, Congress began to direct specific funds to adolescent abstinence education, in addition to the funds appropriated to the TPPP.  In the Consolidated Appropriations Act of 2016, instead of directing funds to "abstinence" education Congress directed funds to "sexual risk avoidance" education, which it defined as "voluntarily refraining from non-marital sexual activity."  Pub. L. No. 114-113, 129 Stat. 2242, 2617.  This terminology has been

maintained in subsequent appropriations.

13.     From 2009 through the present, Congress appropriated funds as follows:

| Fiscal Year | TPPP Funding | Evaluation Funds | Abstinence or "Sexual Risk Avoidance" Funds |
| --- | --- | --- | --- |
| 2010 | $110M | $4.5M | $0M |
| 2011 | $104.8M | $4.4M | $0M |
| 2012 | $104.8M | $8.5M | $5M |
| 2013 | $98.4M | $8.5M | $5M |
| 2014 | $101M | $8.5M | $5M |
| 2015 | $101M | $6.8M | $5M |
| 2016 | $101M | $6.8M | $10M |
| 2017 | $101M | $6.8M | $15M |
| 2018 | $101M | $6.8M | $25M |

14.     On March 23, 2018 Congress again funded the TPPP by appropriating $101M "for making competitive contracts and grants to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy and for the Federal costs associated with administering and evaluating such contracts and grants."   Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, 132 Stat. 348, 733.

15.     Since the program's inception, HHS has provided funding for five-year project periods.  The first project period ran from July 1, 2010 through June 30, 2015, and the second was slated to run from July 1, 2015 to June 30, 2020.

16.     In early 2015, HHS issued new Funding Opportunity Announcements (FOAs) for the July 1, 2015 to June 30, 2020 project period.  The FOAs, like the ones issued in 2010,

provided that the five-year project periods for the grants would be funded in annual increments (budget periods) and that funding for budget periods beyond the first year of the grant would be "contingent upon the availability of funds, satisfactory progress of the project, and adequate stewardship of Federal funds." The FOAs further provided for grantees to submit noncompeting applications in each year of the approved project period, providing progress reports for the current budget year, work plans, budgets, and budget justifications for the upcoming year. *See, e.g.*, Tier 1B FOA, at 39, https://www.hhs.gov/ash/oah/sites/default/files/tier1b-foafile.pdf.

17.     Fifty organizations, including Hennepin County, received grants to replicate evidence-based programs in multiple settings in communities where teen birth rates are significantly higher than the national average.  The programs were designed to provide medically accurate, age appropriate, evidence-based programs to the youth in the communities where the programs operate.

### *Hennepin County's Teen Pregnancy Prevention Efforts*

18.     In 2006 Hennepin County began the Better Together Hennepin Initiative to help realize Hennepin County's vision of healthy, self-reliant citizens through the prevention of teen pregnancy. Recognizing that youth thrive when they wait until adulthood to become parents and that healthy, self-reliant young people build tomorrow's strong communities, Better Together Hennepin aims to provide young people in Hennepin County the supports they need in order to wait until they are adults to become parents which include: healthy youth development opportunities; connections to caring adults; evidence-based sexuality education; and accessible reproductive health services.  Between 2007 and 2016, Hennepin County experienced a 64 percent reduction in teen birth rates.

19.     Hennepin County applied for and was awarded two competitive five-year TPPP grants from HHS.  The first grant, for project period July 1, 2010 to June 30, 2015, was used to

conduct a vigorous evaluation of the effectiveness of two different sexual health curricula in 28 schools and 17 health clinics. If the curricula had positive effects on youth risk behaviors, they would be added to the list of evidence-based curricula maintained by HHS' Office of Adolescent Health.

20.     The curriculum tested by Hennepin County in health clinics, called Safer Sex Intervention ("SSI"), was implemented by providing sexual health education to young women ages 13-19 through one-on-one counseling. SSI was found to have positive impacts on behavior change. During the July 1, 2010 to June 30, 2015 project period, Hennepin County cultivated important relationships with community health care providers and school districts that would position it well to launch its efforts during the next project period.

21.     Despite the downward trend in teen birth rates, data show great disparities within the county by geography, race, and ethnicity. For example, the rate of teenage births was 38.4 per 1,000 girls 15-19 years of age in North Minneapolis in 2016; the rate was 0 in Edina. In 2016, the teenage birth rate was just 3.1 per 1,000 girls 15-19 years of age who are white—but significantly higher for other ethnicities: black (28.7), Hispanic (36.4), and American Indian (40.4). Accordingly, Hennepin County proposed the It's OUR Future project for a competitive TPPP grant for the July 1, 2015 to June 30, 2020 project period focused on those communities with the greatest need.

## HENNEPIN COUNTY'S AWARD OF THE 2015-2020 TPPP GRANT

22.     The goal of It's OUR Future is to reduce teen birth rates by 30 percent over the project period in five specific racially and ethnically diverse communities – Brooklyn Center, Central and North Minneapolis, Richfield and Robbinsdale – which have the highest teen birth rates in Hennepin County. To accomplish this goal, IOF is working to ensure teens have sequential, consistent and reinforcing contacts with evidence-based teen pregnancy prevention

programming over the course of their adolescence by providing a progression of programming at schools and clinics.

23.     IOF is being implemented through a partnership with schools and community-based organizations that provide direct services to youth ages 10-19.  Hennepin County staff in the Better Together Hennepin Initiative provide training and technical support, while school and clinic-based health educators provide education and counseling directly to youth.  Hennepin County's TPPP grant funds are used to fund, in whole or in part, approximately 30 sexual health educator positions within six partner organizations:  The Annex Teen Clinic, Inc.; NorthPoint Health and Wellness Center; Planned Parenthood Minnesota, North Dakota, South Dakota; Independent School District #280 (Richfield Public Schools); Independent School District # 287 (Brooklyn Center Health Resource Center); and the City of Minneapolis Health Department.

24.     IOF School-based programming:  IOF is being implemented in 33 different schools within the five target communities.  IOF offered these schools choices of six curricula that had been placed on OAH's list of approved evidence-based curricula, including one abstinence-based curriculum for middle-schoolers.  Pursuant to the requirements of the TPPP grant, all six curricula choices were reviewed by Hennepin County for medical accuracy, cultural competency, inclusivity, and positive youth development principles, and then sent to OAH for approval.  All six were approved by OAH for use by Hennepin County.

25.     IOF Clinic-based programming:  IOF is being implemented at nine clinics within the five target communities through the use of the SSI curriculum.  Hennepin County has been the largest replicator of the SSI curriculum in the nation and has provided technical assistance to other TPPP grantees implementing SSI.

26.     Imperative to the success of IOF is the project duration.  Making sexual health education a sustainable practice requires years to build relationships with schools and clinics; to

7

engender community support; and to train educators who can provide medically accurate information to each new group of youth.

27.     When Hennepin County applied for the July 1, 2015 to June 30, 2020 TPPP grant, it submitted a work plan for the IOF project, which includes project activities which will not be completed until the end of the project period, or June 30, 2020.

28.     On July 6, 2015, Hennepin County received a congratulatory letter from the Director of the Office of Adolescent Health which stated, "We look forward to working with you over the next five years to support your project and ensure your continued success."

29.     Hennepin County's initial Notice of Award provided that the project period for its grant was five years, from July 1, 2015, through June 30, 2020. Within the project period were five budget periods, running from July 1 to June 30 of each year. The first Notice of Award was for the budget period from July 1, 2015, through June 30, 2016.

30.     Consistent with program requirements, each year of the project period, Hennepin County submitted a non-competing continuation application for the next budget period.

31.     In June of 2016, Hennepin County received a Notice of Award for the budget period from July 1, 2016 through June 30, 2017.  This Notice of Award reflected the same project period of July 1, 2015 through June 30, 2020.

32.     In July of 2017, Hennepin County received a Notice of Award for the budget period July 1, 2017 through June 30, 2018.  However, this Notice of Award stated the project period was July 1, 2015 through June 30, 2018.  In the "remarks" section of the Notice of Award, it stated:  "This award also shortens the project period to end on June 30, 2018 at the end of this budget year. Please note the updated Federal Financial Reporting Cycle on page two of this award and the additional Reporting Requirements for final reports to closeout this grant at the end of the project period."

33.     After it began the It's OUR Future project with the July 1, 2015 to June 30, 2020 TPPP grant, Hennepin County submitted a number of progress reports to OAH, and has submitted five such progress reports to date.

34.     In response to these progress reports, OAH staff provided annual feedback to Hennepin County in the form of a "technical review" that consists of "commendations" and "recommendations" related to the grantee's performance.  The first two technical reviews were provided in writing, on March 31, 2016 and October 10, 2017.  The third technical review was provided via telephone call on April 2, 2018 because OAH declined to provide a written review.

35.     In the October 10, 2017 review, OAH staff wrote, "Grantee's project management and implementation skills are superior and should be well documented as best practice."  In the April 2, 2018 review, OAH staff stated that Hennepin County "has done a great job to date" and "has a reputation as a high performer."

36.     Hennepin County has complied with each of the TPPP requirements throughout the project period.

37.     On March 30, 2018, and after the March 23, 2018 appropriation for continued TPPP funding, Hennepin County submitted its annual non-competing continuation application for the next budget period.

38.     HHS's failure to accept Hennepin County's continuation application for the next budget period thwarts Congress' intent to fully fund the TPPP for FY 2018, and HHS must accept and process Hennepin County's application for the county to complete the It's OUR Future project as planned.  HHS's refusal to process Hennepin County's application will reduce the impact of the sexual health education provided to Hennepin County's highest risk communities.  Hennepin County has informed the six partner organizations that grant funding is currently scheduled to end on June 30, 2018 and that Hennepin County's ability to continue

funding this work will change dramatically unless the grant funding is awarded for year 4. Without funding for year 4, up to 20 community-based health educators will be laid off.

39.     Failure to process Hennepin County's application in a timely manner will result in the loss of highly-trained and knowledgeable staff who have been implementing the IOF to date, which will hurt Hennepin County's teen pregnancy prevention efforts to achieve an additional 30% reduction in teen birth rates

40.     HHS's failure to provide a reasoned basis for the termination of Hennepin County's grant, and termination of the grant in a manner contrary to HHS regulations, constitutes final agency action that is arbitrary, capricious, and not in accordance with law under the Administrative Procedure Act (APA).

## CAUSE OF ACTION

### *APA – Unlawful Decision to Terminate Grant Funding*

1.     The APA authorizes this Court to hold unlawful and set aside final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

2.     Defendants' termination of Hennepin County's grant constitutes final agency action under the APA.

3.     HHS's grant regulations set forth specific reasons why HHS may terminate an award prior to the end of the planned period: (1) "if the non–Federal entity fails to comply with the terms and conditions of the award"; (2) "for cause"; or (3) "with the consent of the non–Federal entity." 45 C.F.R. § 75.372(a).

4.     Defendants' termination of Hennepin County's grant was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because it was contrary to HHS regulations providing the reasons for termination prior to the end of the planned project period.

5.      Even if Defendants action was not a "termination" pursuant to 45 C.F.R. § 75.2, Defendants' decision to shorten the grant period for Hennepin County's TPP grant was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because Defendants provided no explanation for their decision.

6.      Even if Defendants action was not a "termination" pursuant to 45 C.F.R. § 75.2, Defendants decision to shorten the grant period for Hennepin County's TPPP grant was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because Defendants changed their position with respect to the grant period without adequate explanation.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Court:

(A)      Declare defendants' termination of Hennepin County's TPPP grant unlawful;

(B)      Enjoin defendants to reinstate Hennepin County's TPPP grant for the awarded five-year project period and to continue to administer the grans to the same extent and in the same manner as prior to the unlawful termination, as provided in the notices of award and HHS regulations;

(C)      Award Hennepin County costs and reasonable attorney fees; and

(D)      Grant such other relief as this Court may deem just and proper.

Respectfully submitted,

Dated: May 3, 2018          /s/ Ginger Anders_____
GINGER ANDERS (D.C. Bar No. 494471)
Munger, Tolles & Olson LLP
1155 F Street N.W., Seventh Floor
Washington, DC 20004-1357
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Ginger.Anders@mto.com

MICHAEL O. FREEMAN
Hennepin County Attorney

DANIEL P. ROGAN (Minn. Atty. ID. 274458)
REBECCA L. S. HOLSCHUH (Minn. Atty. ID. 0392251)
*Motions for admission pro hac vice pending*
2000 Government Center
300 South Sixth Street
Minneapolis, MN 55487
Tel. (612) 348-4797
Daniel.Rogan@hennepin.us
Rebecca.Holschuh@hennepin.us

*Attorneys for Plaintiff Hennepin County*